IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TERESA DESANTIS POPPINO,

    Plaintiff,

v.                                                                                           1:19-cv-01022-MV-LF

ANDREW M. SAUL, Commissioner
of the Social Security Administration,

    Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSTION

THIS MATTER comes before the Court on plaintiff Teresa DeSantis Poppino's Motion to Reverse and Remand for Rehearing, with Supporting Memorandum (Doc. 16), which was fully briefed on July 1, 2020. *See* Docs. 20, 21, 22. District Judge Martha Vazquez referred this case to me pursuant to 28 U.S.C. § 636(b)(1) and (b)(3) "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case." Doc. 15. Having meticulously reviewed the entire record and being fully advised in the premises, I find Ms. Poppino's motion is well-taken and recommend that the Court GRANT it.

**I.**     **Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court

with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted).  The Court must meticulously review the entire record but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118.  A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.*  While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).  "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

II.     **Applicable Law and Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  At the first four steps of the evaluation process, the claimant must show: (1) the

claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[1] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. § 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

## III. Background and Procedural History

Ms. Poppino was born in 1956 and completed a bachelor's degree in English and literature. AR 38, 225, 539.[2] She worked as a radio ad copywriter, a casino dealer, and a customer service representative at a call center. AR 39, 207, 219, 241. Ms. Poppino filed an application for Supplemental Security Income ("SSI") benefits in September 2016,[3] alleging disability due to diabetes, migraines, rheumatoid arthritis, and fibromyalgia. AR 175–90, 176, 206, 218, 225. The Social Security Administration ("SSA") denied her claim initially and on

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

[2] Document 12-1 is the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

[3] The record indicates that Ms. Poppino completed and signed her application for SSI on September 7, 2016. AR 175–83. The electronically stored application indicates that Ms. Poppino applied for SSI on September 27, 2016. AR 185–90. The ALJ stated that Ms. Poppino filed her application on September 6, 2016. AR 14. The difference in application dates does not impact the Court's decision, but it may need to be addressed on remand.

reconsideration. AR104–07, 111–14. Ms. Poppino requested a hearing before an ALJ. AR 115–17. On November 7, 2018, ALJ Stephen Gontis held a hearing. AR 32–78. ALJ Gontis issued his unfavorable decision on November 27, 2018. AR 9–31.

At step one, the ALJ found that Ms. Poppino had not engaged in substantial, gainful activity since September 6, 2016, her application date. AR 14. At step two, the ALJ found that Ms. Poppino suffered from the severe impairments of osteoarthritis and allied disorders, fibromyalgia, degenerative disc disease, and hearing loss. *Id.* The ALJ found that her obesity, diabetes mellitus, migraines, and depression were nonsevere. AR 14–16. At step three, the ALJ found that none of Ms. Poppino's impairments, alone or in combination, met or medically equaled a Listing. AR 16–17. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Ms. Poppino's RFC. AR 17–25. The ALJ found Ms. Poppino had the RFC to

> perform light work as defined in 20 CFR 416.967(b) except lift, carry, push, and pull no more than 20 pounds occasionally and 10 pounds frequently; sit for six hours, stand for six hours, & walk for six hours in an eight-hour workday. She can reach, handle, and finger bilaterally in all directions frequently rather than constantly. The claimant can climb ramps and stairs frequently, but never climb ladders, ropes, or scaffolds. She can balance frequently, stoop frequently, kneel frequently, crouch frequently, & crawl frequently. The claimant can work in environments with significant humidity and wetness occasionally, in extreme cold occasionally, in extreme heat occasionally. She can work in environments with significant vibration occasionally. She can work in environments with no more than moderate noise. Her time off task can be accommodated by normal breaks.

AR 17. At step four, the ALJ concluded that Ms. Poppino was able to perform her past relevant work as a copywriter as it is generally performed and therefore was not disabled. AR 25.

On December 3, 2018, Ms. Poppino requested review of the ALJ's unfavorable decision by the Appeals Council. AR 171–74. On September 5, 2019, the Appeals Council denied the

request for review.  AR 1–6.  Ms. Poppino timely filed her appeal to this Court on November 4, 2019.  Doc. 1.[4]

**IV.     Ms. Poppino's Claims**

Ms. Poppino raises two major arguments and several sub-arguments for reversing and remanding this case:

(1) the ALJ failed to properly evaluate Ms. Poppino's past work, including

    (a) failing to properly evaluate the physical and mental RFC; and

    (b) failing to make specific findings regarding Ms. Poppino's ability to perform the components of her past work as generally performed; and

(2) the ALJ failed to properly assess Ms. Poppino's RFC, including,

    (a) failing to properly assess her limitations of handling and reaching;

    (b) failing to consider limitations from headaches;

    (c) failing to include mental limitations in the RFC finding by

        (i) failing to consider the effects of stress and fatigue;

        (ii) failing to properly assess the opinion of examining psychologist Dr. Robert Krueger, Ph.D.;

        (iii) failing to properly assess the opinion of nurse practitioner Melinda O'Neil, CANP;

        (iv) failing to explain the weight given to examining psychologist, John P. Owen, Ph.D.; and

        (v) improperly assessing Ms. Poppino's symptoms.

---

[4] A claimant has 60 days to file an appeal.  The 60 days begins running five days after the decision is mailed.  20 C.F.R. § 404.981; *see also* AR 2.

The Court finds that the ALJ failed to provide legitimate reasons for discounting Dr. Krueger's opinion; therefore, the RFC is not based on substantial evidence. The Court will not address Ms. Poppino's other claims of error as they "may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

V.      **Analysis**

Step Four of the sequential evaluation process is comprised of three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996).

> In the first phase, the ALJ must evaluate a claimant's physical and mental [RFC], and in the second phase, he [or she] must determine the physical and mental demands of the claimant's past relevant work. In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. At each of these phases, the ALJ must make specific findings.

*Id*. (citations omitted). The ALJ's findings regarding a claimant's RFC must be supported by substantial evidence. *See Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999).

An "RFC determines a work capability that is exertionally sufficient to allow performance of at least substantially all of the activities of work at a particular level." SSR 83-10, 1983 WL 31251, at *2. It is a reflection of "the maximum amount of each work-related activity the individual can perform," and the ALJ must describe the "individual's ability to perform sustained work actives in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "A 'regular and continuing basis' means 8 hours a day, for five days a week, or an equivalent work schedule." *Id.* at *2. When assessing a claimant's RFC, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." *Id.* at *7. Further, "the RFC assessment must include a discussion of why reported symptom-related

6

functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." *Id*.

Dr. Krueger performed a psychological evaluation for Ms. Poppino on October 14, 2018. AR 537–44.  "An ALJ must evaluate every medical opinion in the record." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004); *see also* 20 C.F.R. § 416.927(c) (effective March 27, 2017) ("Regardless of its source, we will evaluate every medical opinion we receive.").[5]  An ALJ's "RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7.  "[T]he opinion of an examining physician who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion." *Doyal v. Barnhart*, 331 F.3d 758, 763 (10th Cir. 2003).  Nevertheless, the ALJ is required to consider the examining physician's opinion.  *Id*. at 764 (citations omitted)).  When evaluating the opinion of any medical source, an ALJ must consider the following:

1. **Examining relationship**:  more weight is given to the opinion of a source who has examined the claimant than to one who has not;
2. **Treatment relationship**:  more weight is given to the opinion of a source who has treated the claimant than to one who has not; more weight is given to the opinion of a source who has treated the claimant for a long time over several visits and who has extensive knowledge about the claimant's impairment(s);
3. **Supportability:**  more weight is given to a medical source opinion which is supported by relevant evidence (such as laboratory findings and medical signs), and to opinions supported by good explanations;
4. **Consistency:**  the more consistent the opinion is with the record as a whole, the more weight it should be given;

---

[5] "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions."  20 C.F.R. § 404.1527(a)(1) (effective March 27, 2017).

5. **Specialization**: more weight is given to the opinion of a specialist giving an opinion in the area of his/her specialty; and
6. **Other factors**: any other factors that tend to contradict or support an opinion.

*See* 20 C.F.R. § 416.927(c)(1)–(6) (effective March 27, 2017). If an ALJ rejects an opinion, he or she "must provide specific, legitimate reasons for rejecting it." *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (internal quotation marks omitted).

Dr. Krueger opined that Ms. Poppino was:

- Moderately limited in carrying out short and simple instructions;
- Markedly limited in carrying out detailed instructions;
- Markedly limited in maintaining attention and concentration for extended periods of time;
- Markedly limited in performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerance;
- Markedly limited in sustaining an ordinary routine without special supervision;
- Moderately limited in working in coordination with/or proximity to others without being distracted by them;
- Markedly limited in completing a normal workday and workweek without interruptions from psychological-based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods;
- Moderately limited in interacting appropriately with the general public;
- Moderately limited in accepting instructions and responding appropriately to criticism from supervisors;
- Moderately limited in getting along with coworkers or peers without distracting them or exhibiting behavioral extremes;
- Moderately to markedly limited in responding appropriately to changes in the work place;
- Moderately limited in being aware of normal hazards and taking adequate precautions;
- Markedly limited in traveling to unfamiliar places or using public transportation; and
- Moderately limited in setting realistic goals or make plans independently of others.

AR 487–89. Dr. Krueger further noted that Ms. Poppino's functional limitations included a markedly limited ability to adapt or manage herself and a markedly limited ability (at times) to interact with others. AR at 489. He also noted that ongoing medical treatment, mental health therapy, psychosocial supports, or a highly structured setting diminished the symptoms and signs of Ms. Poppino's mental disorder. *Id*. Dr. Krueger's opinions were presented in three checkbox

8

forms and a narrative statement.  AR 487–90, 537–45.

The ALJ gave Dr. Krueger's opinions "limited weight" and provided several reasons for that weight.  AR 23–24.  The ALJ discounted Dr. Krueger's opinions because he found that:

1) "[T]he opinions are not supported by objective elements of the exam or the other medical evidence."

2) "They are based primarily on subjective complaints of physical issues outside of the psychologist's area of expertise."

3) "[T]he opinions [of Dr. Krueger] are inconsistent with each other in several areas, including social interaction and concentration, persistence, and pace."

4) Ms. Poppino is not getting treatment for mental impairments.

5) Dr. Krueger did not use a Social Security form.

AR 24.  The ALJ did not include any mental limitations in Ms. Poppino's RFC other than to state that "[h]er time off task can be accommodated by normal breaks."  AR 17.  Ms. Poppino argues that the reasons the ALJ provided for discounting Dr. Krueger's opinion are legally insufficient.  Doc. 16 at 15–21; Doc. 21 at 8–10.  I agree with Ms. Poppino.

First, the ALJ found that Dr. Krueger's opinions "are not supported by objective elements of the exam or the other medical evidence."  AR 24.  Dr. Krueger, however, conducted several objective tests while examining Ms. Poppino.  For example, Dr. Krueger performed the "Name Three Objects" test (testing her memory), a WAIS-IV IQ test (testing her cognitive abilities), and the Beck Depression Inventory test ("BDI") (testing difficulties with depression).  AR 541–42, 545.  Although Ms. Poppino's cognitive abilities were above average, her "very highly elevated" BDI score suggested that Ms. Poppino has "serious difficulties with depression."  AR 542.  Ms. Poppino's BDI score supports Dr. Krueger's finding that Ms. Poppino impairments include depression.  AR 487.  Further, a doctor's "observations about a claimant's limitations *do* constitute specific medical findings." *Robinson*, 366 F.3d at 1083 (emphasis added).  Dr.

9

Krueger observed that Ms. Poppino "presented as being depressed and anxious," and "[h]er emotional expression was very intense, and she was somewhat labile." AR 541. She showed "ongoing evidence of having a bipolar disorder with depression and possible hypomania," and she had "symptoms that are consistent with [generalized anxiety disorder]." AR 543. Although the ALJ mentioned the results of some of the objective tests in his decision, AR 23, he failed to discuss Dr. Krueger's observations and other medical findings. The ALJ did not mention the BDI score anywhere in his decision. The ALJ "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Because the record establishes that Dr. Krueger's opinions are supported by objective elements of the exam and other medical evidence, the ALJ did not have a legitimate reason to discount Dr. Krueger's opinions on supportability grounds.

Second, the ALJ found that Dr. Krueger's opinions "are based primarily on subjective complaints of physical issues outside of the psychologist's area of expertise." AR 24. Ms. Poppino correctly points out that one of the ways a mental health clinician evaluates a mental impairment is to elicit a description of symptoms from the patient. Doc. 16 at 18. "The practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements. A psychological opinion need not be based on solely objective 'tests'; those findings 'may rest either on observed signs and symptoms or on psychological tests.'" *Thomas v. Barnhart*, 147 F. App'x. 755, 759 (10th Cir. 2005) (unpublished) (quoting *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004)). Dr. Krueger elicited Ms. Poppino's subjective statements describing her symptoms. AR 538–40. As discussed above, he also observed that she "presented as being depressed and anxious," that "her emotional expression was very intense," that she showed "ongoing evidence of having a bipolar disorder with depression and possible hypomania," and

that she appeared "quite stressed." AR 541. Dr. Krueger performed psychological tests such as the BDI test, as discussed above. And he reviewed Ms. Poppino's medical records, which supported her reports of "chronic pain and various ongoing medical issues." *See* AR 538, 543. Further, Dr. Krueger stated that his findings were based not only on Ms. Poppino's ongoing medical issues, but also on her "psychiatric issues," "chronic emotional difficulties," and "high anxiety." AR 543–44. Given these statements, Dr. Krueger's observations of Ms. Poppino, Ms. Poppino's highly elevated BDI score, and his review of her medical records, the ALJ improperly characterized Dr. Krueger's opinions as being based "primarily" on subjective complaints of physical issues outside of Dr. Krueger's area of expertise.

Moreover, that Dr. Krueger may have based some of his opinions on Ms. Poppino's "subjective complaints of physical issues"—which the ALJ asserted were "outside of the psychologist's area of expertise"—is not a legitimate reason for discounting Dr. Krueger's opinions. Both the Tenth Circuit and the SSA have recognized "the possibility that psychological disorders combine with physical problems," *Winfrey v. Chater*, 92 F.3d 1017, 1021 (10th Cir. 1996) (quoting *Luna v. Bowen*, 834 F.2d 161, 166 (10th Cir. 1987)), and that non-exertional mental impairments may limit a claimant's exertional abilities, *id.* at 1023; SSR 85-15, 1985 WL 56857, at *2. As mentioned above, Dr. Krueger administered the BDI test on Mr. Poppino and found that her "very highly elevated score . . . suggest[ed] serous difficulties with depression now." AR 542. It should "come as no surprise that people with a medical illness or condition are more likely to suffer from depression." National Institute of Mental Health, Chronic Illness & Mental Health Brochure and Fact Sheet, available at www.nimh.nih.gov/health/publications/chronic-illness-mental-health/index.shtml (last visited 3/3/2021). "Depression is common among people who have chronic illnesses such as . . .

Diabetes . . . [and] Rheumatoid arthritis," *id.*, two illnesses from which Ms. Poppino suffers. Further, "[d]epression may persist, even as physical health improves," and "[r]esearch suggests that people who have depression and another medical illness tend to have more severe symptoms of both illnesses." *Id.*  In other words, Ms. Poppino's physical impairments and her mental impairments[6] likely relate to one another, and it's not obvious that connecting the two would be outside a psychologist's area of expertise.  Notably, Dr. Krueger did not diagnose Ms. Poppino with the physical conditions of which she complained; he simply observed that her mental and physical impairments and other medical issues likely would affect her ability to perform mental work-related activities.  *See* AR 487–88, 543–44.  Nevertheless, Dr. Krueger did not base his opinions solely on Ms. Poppino's physical issues.  As outlined above, Dr. Krueger based his opinions on a review of Ms. Poppino's medical records, the tests he administered to her, his observations of her during the exam, and her statements to him regarding her medical and psychosocial history.  AR 537–45.  In other words, the ALJ's determination that Dr. Krueger's opinions were "based primarily on subjective complaints of physical issues outside of the psychologist's area of expertise" is not supported by substantial evidence and is not a legitimate reason for discounting his opinion.

The ALJ's third reason for discounting Dr. Krueger's opinion was because it was internally inconsistent.  AR 24.  The ALJ found that exhibits B12F (checkbox forms at AR 487–90) and B16F (narrative at AR 537–45) are "inconsistent with each other in several areas, including social interaction and concentration, persistence, and pace." *Id*.  The ALJ does not elaborate on where the inconsistency is within those documents.  Indeed, Dr. Krueger's

---

[6] Dr. Krueger diagnosed Ms. Poppino with Bipolar II Disorder, with current evidence of major depression and possible hypomania, and Generalized Anxiety Disorder.  AR 489–90, 542–43.

statements are not inconsistent. For example, in his narrative regarding social interaction, Dr. Krueger notes that "[b]ecause of chronic emotional difficulties, [Ms. Poppino] is at least moderately impaired in relationships with coworkers, supervisors, and the general public." AR 543. In the first check box form (AR 487–88), Dr. Krueger marked Ms. Poppino as having a moderate limitation in the ability to interact with the general public, respond appropriately to criticism from supervisors, and get along with coworkers or peers. AR 488. With regard to concentration, persistence, and pace, Dr. Krueger notes in his narrative that "she is markedly impaired with maintaining pace and persistence." AR 543. In the check box form, Dr. Krueger designated Ms. Poppino as having marked limitations in maintaining attention and concentration for extended periods of time, performing activities within a schedule, sustaining an ordinary routine without special supervision, and in her ability to "perform at a constant pace without unreasonable number and length of rest periods." AR 487. Dr. Krueger's narrative is not inconsistent with the first checkbox form.

   The ALJ noted that Dr. Krueger's evaluation of Ms. Poppino revealed above average cognitive skills and a full-scale IQ of 113, which he found inconsistent with Dr. Kruger's opinion that Ms. Poppino had marked limitations in understanding, remembering, or applying information. AR 24. The problem with the ALJ's finding is that Dr. Kruger did not opine that Ms. Poppino had a marked limitation in understanding, remembering, or applying information. In the second and third checkbox forms (AR 489–90) , Dr. Krueger noted that Ms. Poppino had a marked limitation (at times) in her ability to interact with others and the ability to adapt or manage oneself. AR 489–90. Although a limitation in "understanding, remembering, or applying information" is an option on both the second and third forms, he did not check those boxes. *Id*. The ALJ, therefore, improperly discounted Dr. Krueger's opinions for

inconsistency.⁷

Fourth, the ALJ discounted Dr. Krueger's opinion because Ms. Poppino is not getting treatment for mental impairments. Whether a claimant is receiving treatment for a mental impairment is not a legitimate factor in assessing an examining physician's opinions. *See Grotendorst v. Astrue*, 370 F. App'x 879, 883 (10th Cir. 2010) ("[T]he lack of treatment for an impairment does not necessarily mean that the impairment does not exist or impose functional limitations. Further, attempting to require treatment as a precondition for disability would clearly undermine the use of consultative examinations."); *see also Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (finding the claimant's failure to seek treatment for a mental disorder was not a substantial basis on which to conclude that the examining psychologist's assessment of claimant's condition is inaccurate). Ms. Poppino's lack of treatment was not a legitimate reason to discount Dr. Krueger's opinion.

The Commissioner cites *White v. Berryhill*, 704 F. App'x 774, 778 (10th Cir. 2017) (unpublished) in support of its proposition that a lack of treatment was a legitimate reason to discount Dr. Krueger's opinions. Doc. 20 at 17. In *White*, however, the Tenth Circuit stated that

---

⁷ The Commissioner argues that other parts of the record support the ALJ's conclusion that Dr. Krueger's opinions are inconsistent with Ms. Poppino's other statements. For example, he argues that "the ALJ reasonably concluded that Plaintiff's reported abilities were inconsistent with her statements to Dr. Krueger that she was not able to leave the house, that she had difficulty caring for herself, and that she could only persist at a task for a short time (*compare* Tr. 503 *with* Tr. 540)," and that "the ALJ also noted that while Dr. Krueger assessed Plaintiff with marked limitations on October 12, 2018, based primarily on her statements of disability, only 10 days earlier, Plaintiff reported no difficulties in areas of such as dressing herself, doing errands alone, concentrating, remembering, or making decisions due to a mental or emotional condition (Tr. 24; *see* Tr. 503)." Doc. 20 at 17–18. These statements, however, are not contained in the ALJ's decision and present post-hoc rationalizations for the ALJ's conclusions. The Court may not rely on post-hoc rationalizations to affirm an ALJ's decision. *See Haga v. Astrue*, 482 F.3d 1205, 1207–08 (10th Cir. 2007) (The court will not adopt a post-hoc rationalization for the ALJ's decision that is not apparent from the ALJ's own opinion.).

14

"[a] claimant's failure to seek medical treatment is a proper factor in assessing the *credibility* of a claim of severe impairment." *White*, 704 F. App'x at 778 (emphasis added).  Here, the ALJ was using the lack of treatment to assess an examining physician's opinions, not to determine whether Ms. Poppino's statements were credible.  The Commissioner also cites *Rivera v. Colvin*, 629 F. App'x. 842 (10th Cir. 2015) in support of his argument.  In *Rivera*, the ALJ discounted an examining physician's opinion based on a claimant's subjective complaints that the ALJ found were incredible.  *Rivera*, 629 F. App'x. at 845.  As discussed above, Dr. Krueger's opinions were not primarily based on Ms. Poppino's subjective complaints, and the ALJ was not assessing Ms. Poppino's credibility.

The Court recognizes that credibility is no longer a factor assessed by an ALJ.  In 2016, SSR 16-3p rescinded SSR 96-7, seeking to "clarify that subjective symptom evaluation is not an examination of an individual's character."  SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017) (republishing SSR 16-3p).  The SSA removed the word "credibility."  *Id.*  The SSA does not, however, prevent ALJs from considering "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence . . . ."  20 CFR § 404.1529(c)(4).  In fact, although SSR 16-3p rescinded the earlier SSR 96-7p, which addressed credibility determinations, the factors that the ALJ must consider in evaluating a claimant's subjective symptoms remain the same.  *See Watts v. Berryhill*, 705 F. App'x 759, 763 n.4 (10th Cir. 2017) (unpublished).  Thus, while the SSA no longer uses the term "credibility," inconsistencies in the claimant's statements remain a proper basis for the ALJ to discount subjective reports of symptoms.  Although the Commissioner argues that Ms. Poppino's statements provided a basis for the ALJ to discount reports of her symptoms, the ALJ did not

include this rationale in his opinion, and the Court will not adopt this post-hoc rationalization. *See* n.7, *supra*.

Finally, the ALJ discounted Dr. Krueger's opinions because "Exhibit B12F is not a Social Security form." AR 24. Exhibit B12F includes two checkbox forms filled out by Dr. Krueger noting his opinion of the degree of Ms. Poppino's functional limitations. The ALJ asserts that the checkbox form "does not provide a proper evaluation" because it only contains "Slight, Moderate, and Marked" choices rather than "None, Mild, Moderate, Marked or Extreme." *Id*. This is a distinction without a difference. As Ms. Poppino points out, the SSA's Program Operations Manual System (POMS) defines "markedly limited" as when "the evidence supports the conclusion that the individual cannot usefully perform or sustain the activity." Doc. 16 at 21 (citing POMS DI 24510.063.B.3).

> The first form used by Dr. Krueger defined "marked" as
>
> > A severe limitation which precludes the individual's ability usefully to perform the designated activity on a regular and sustained basis, i.e., 8 hours a day, 5 days a week, or an equivalent schedule. The individual cannot be expected to function independently, appropriately, and effectively on a regular and sustained basis.

AR 487–88. The second form used by Dr. Krueger defined "marked limitation" as "[f]unctioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." AR 489–90. The definition used by the SSA and the forms used by Dr. Krueger communicate the same idea—that a marked limitation has a serious effect on a person's ability to function independently, appropriately, and effectively on a sustained basis. The definitions on the forms are substantially similar to the definitions used by the SSA and provided the ALJ with enough information to know what Dr. Krueger meant when he indicated that Ms. Poppino had a "marked" limitation in a particular ability or area. The Commissioner did not

respond to Ms. Poppino's argument that the ALJ should not have discounted Dr. Kreuger's opinion for not using the SSA form. The Commissioner, therefore, concedes that Dr. Krueger's failure to use an SSA form is not a legitimate reason for discounting Dr. Krueger's opinions.

VI. **Conclusion**

The ALJ failed to apply the correct legal standards by failing to provide legitimate reasons for discounting Dr. Krueger's opinions. Consequently, I recommend that Plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 16) be GRANTED and the case REMANDED for further proceedings.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). Written objections must be both timely and specific.** *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, **73 F.3d 1057, 1060 (10th Cir. 1996). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. Failure to file timely and specific objections will result in waiver of** *de novo* **review by a district or appellate court. In other words, if no objections are filed, no appellate review will be allowed.**

_____
Laura Fashing
United States Magistrate Judge